## COMMERCIAL STATE BANK & TRUST COMPANY v. JAMES L. BATES, TRUSTEE IN BANKRUPTCY.

### [51 South. 599.]

BANKRUPTCY.   *Fraudulent   preference.   Avoidance.   Time.   Copartnership.*

> Where an insolvent copartnership, with the knowledge of a bank of which one of its members was president and to which it was indebted on overdrafts, secured extensions for four months from its nonresident creditors, sold all of its assets, except its accounts, receiving therefor the notes of the purchaser payable to the bank, delivered the notes to the bank, receiving credit on its overdrafts for their face value, leaving a balance due the bank, and placed its accounts with an attorney, instructing him to deposit collections in the bank, a part of which went to pay the balance due the bank and the remainder to pay local creditors, the application of the notes was not an ordinary preference, but was a fraud on the bankruptcy law and subject to be vacated at the suit of the trustee in bankruptcy proceedings against the copartnership, although such proceedings were not begun within four months of the transaction.

FROM the chancery court of Yazoo county.

HON. G. GARLAND LYELL, chancellor.

Bates, trustee in bankruptcy, appellee, was complainant in the court below; the Commercial State Bank & Trust Company,

appellant, was defendant there. From a decree in complainant's favor defendant appealed to the supreme court.

On November 24, 1906, the New Lumber Company sold all of its assets, except its accounts, to one Harlow for $8,258.81; the purchase price being evidenced by three notes payable six, nine, and twelve months after date. The bill of sale was signed by the attorney in fact for the vendor, and recited a cash consideration, and the notes given as the purchase price were made payable to the Commercial State Bank & Trust Company. These notes were immediately delivered to the bank, and the account of the New Lumber Company with it was credited with the face value of the notes. The New Lumber Company before the giving of the credit was indebted to the bank on account of overdrafts in the unsecured sum of $8,409.24. At the same time the lumber company placed in the hands of its attorney for collection all of its open accounts, and as they were collected by him the proceeds were deposited in said bank; a part of said collections going to cover the balance of the overdraft, and the remainder being paid to creditors of the lumber company living in Yazoo City, the domicile of said company; the collections on the accounts practically settled in full all the claims of local creditors. At the time the sale was made to Harlow, the lumber company was indebted to foreign creditors to an amount of about $8,500, and they received nothing. The New Lumber Company was a partnership composed of S. R. Berry and A. B. Brooks; Berry being, as well, the president of the Commercial State Bank & Trust Company and in active charge of its affairs at the time said lumber company was sold out. The attorney who executed the bill of sale for the New Lumber Company was also the attorney for the bank. Berry, the president of the bank, was interested in other business enterprises, and he and the firms in which he was interested were largely indebted to the bank, and owed also a number of other debts. The directors of the bank instructed Berry to

collect or secure these overdrafts, and accordingly he advised Brooks that it was necessary to sell the assets of the New Lumber Company; Brooks testified that it was his understanding that the proceeds of the sale were to be prorated among all creditors, the bank included, and that he did not learn that the bank had applied the Harlow notes to its overdraft until some time in April, after bankruptcy proceedings had been instituted by nonresident creditors. The non-resident creditors were kept in ignorance of the fact that the notes had been collected by the bank. On November 23, 1906, the day before the sale to Harlow, Berry, acting for the New Lumber Company, wrote to the nonresident creditors, telling them that collections were poor and business bad, and that the firm was embarrassed for ready money, and asking them to accept notes due in four months in settlement of their accounts. After some correspondence the creditors agreed to do this. These creditors did not learn that the Harlow notes had been applied to the payment of the overdraft of the bank until their notes became due and unpaid; this being more than four months after the application of the Harlow notes to the account of the bank. At the time of the sale to Harlow the New Lumber Company and Berry and Brooks were hopelessly insolvent, and the bank had taken over all of Berry's property in payment of the large sums due it. On April 8, 1907, the nonresident creditors began proceedings to have the New Lumber Company declared a bankrupt. Bates, appellee, was appointed trustee, and this suit was instituted by him against the Commercial State Bank & Trust Company to recover the value of the Harlow notes. The court below decreed for the trustee, holding that the transfer of said notes was an unlawful preference and that the bank was liable to surrender them or account for their proceeds.

The chancellor's finding is as follows: "That the manifest purpose of the said Commercial State Bank & Trust Company

and the said New Lumber Company, in making the said Harlow notes payable to the said Commercial State Bank & Trust Company and the transfer of all other assets of said New Lumber Company, was in fraud of said national bankruptcy acts, and to prevent the other creditors of the said New Lumber Company from sharing in the distribution of the assets of said New Lumber Company, and to unlawfully appropriate the entire proceeds of said Harlow notes to said overdraft of said bank; that the fact that said notes had been taken in the name of the said Commercial State Bank & Trust Company, and had been indorsed to the said Commercial State Bank & Trust Company by said New Lumber Company, and the further fact that said notes had been applied by said Commercial State Bank & Trust Company in settlement of the overdraft aforesaid, were purposely and fraudulently concealed from the other creditors of the said New Lumber Company, by the said Commercial State Bank & Trust Company and by the said New Lumber Company, S. R. Berry, a member of the partnership of the New Lumber Company, acting for the New Lumber Company throughout the entire transaction as a member thereof, and acting at the same time throughout the entire transaction in procuring an extension from creditors for the said Commercial Bank & Trust Company, as its president, he, the said S. R. Berry, being duly authorized so to act by both the said New Lumber Company and the said Commercial State Bank & Trust Company; that the acts of said Berry, he acting at the time both for the said New Lumber Company and the said Commercial State Bank & Trust Company, in procuring from the creditors of said New Lumber Company an extension of their indebtedness, were committed in furtherance of a fraudulent scheme, being with the intent and for the purpose of fraudulently inducing the said creditors of the said New Lumber Company to forego their rights under the acts of Congress of the United States relating to bankruptcy, and with the intent and

purpose of evading the provisions of said acts fixing a period of four months within which preferential payments could be set aside; that in furtherance of their said fraudulent scheme to defeat the provisions of said bankruptcy acts the said creditors of the said New Lumber Company were deceived and misled by the said Commercial State Bank & Trust Company and the said New Lumber Company, and by the said S. R. Berry, acting as a member of the firm of said New Lumber Company, and as president for the said Commercial State Bank & Trust Company, and thereby induced to forego, and did by reason of such acts forego, their rights under the said bankruptcy act to have said preferential payment to said Commercial State Bank & Trust Company set aside within said four months, and the said right of said creditors to so act under said bankruptcy act was fraudulently evaded by the said scheme of the said New Lumber Company and said Commercial State Bank & Trust Company; that said creditors did not learn of said fraudulent scheme and said unlawful preference until four months had elapsed after the said 24th day of November, 1906, and that promptly after the discovery of said fraud and of said unlawful preference by said creditors the petitioning creditors filed their petition in involuntary bankruptcy against said New Lumber Company, and the said New Lumber Company was duly adjudged bankrupt by the bankrupt court, and that promptly thereafter the complainant, the duly appointed trustee of the said New Lumber Company filed his bill of complaint in this cause, to recover said unlawful preference; that the said Commercial State Bank & Trust Company had knowledge of the insolvency of the said partnership of New Lumber Company and of each of the members thereof, to wit, S. R. Berry and A. B. Brooks, at the time of the said transfer to it, to wit, November 24, 1906, and the said payment was received by said bank with full knowledge that the same was a preference, and that it was so intended by the New Lumber Company."

*E. L. Brown* and *Barnett & Perrin,* for appellant.

The evidence adduced would not support the decree had the petition for an adjudication been filed within four months of the date of the payment sought to be recovered.    *Grant v. Bank,* 97 U. S. 80; *Getts v. Jonesville,* 163 Fed. 419 *et seq.*

The transfer was not fraudulent under the common law.    14 Ency. of Law, 226; *Parks v. Bamberger,* 52 Miss. 565; *Barbour v. Priest,* 103 U. S. 293; *Githens v. Schiffler,* 112 Fed. 505; *Bradley v. Fuller,* 118 Mass. 239; *In re Hunt,* 139 Fed. 283.

It is the common case of a debtor preferring a favored creditor and of such creditor's availing himself of this advantageous position.    *Fargason v Bank,* 78 Miss. 65, 27 South. 877.

Brown's knowledge of Berry's intent and purpose was not imputable to the bank, if he had any knowledge to be imputed, but there is no evidence that he had any.    2 Pomeroy's Eq. § 336, Note 1; *Equitable, etc., Co. v. Shepherd,* 78 Miss. 217, 28 South. 842.

Berry's knowledge of his insolvency and that of his firm's and of his firm's purpose to prefer was not imputable to the bank.    *Pickles v. McPherson,* 59 Miss. 216; *Gilruth v. Decell,* 72 Miss. 252; *Greenwood v. Coal Co.,* 72 Miss. 46; *Barbour v. Priest,* 103 U. S. 293; *Lambert v. Building & Loan Assn.,* 4 Fed. 48; *McNaboe v. Mfg. Co.,* 153 Fed. 967; *Stevenson v. Bay City,* 28 Mich. 44.

The period of four months prescribed by section 60a of the Bankruptcy Act cannot be extended by construction.    *Auffmordt v. Razin,* 102 U. S. 602; *Ehlers v. Elder,* 51 Miss. 495; *Bartlett v. Manor,* 45 N. E. 1060; *In re Dupree,* 97 Fed. 28; *In re Haff,* 136 Fed. 78; *Little v. Hollybrook,* 133 Fed. 874; *Bank v. Depauw,* 105 Fed. 926.

The sections 3b and 60a deal with different subjects, and to contend that the two must be construed together, or that the language of 3b omitted from 60a is to be read into the latter

section, is to confound separate, distinct and unconnected matters. *Little v. Hollybrook Co.,* 133 Fed. 874; *Pirie v. Chicago Co.,* 182 U. S. 438; *Wilson Bros. v. Nelson,* 183 U. S. 191; *Tatam v. Humphrey,* 198 U. S. 618; *Thompson v. Fairbanks,* 196 U. S. 516.

Section 60a construed alone is a complete and perfect definition, the literal import leads to no "absurdity" or "oppression," or "injustice," there is no "overwhelming necessity" for construction, and, therefore, "the intent of the section is to be looked for in its words   *   *   *   which are its only expositors." *Pirie v. Chicago Co.* 182 U. S. at p. 451.

The fact is that the bankruptcy law is to be construed literally; if not, absurdity arises. The proposition runs all through the opinion and is the foundation of the case which caused the amendment of 60a and 60b. *Pirie v. Chicago Co.,* 182 U. S. 438.

Section 60a is a definition, and definitions admit of no construction. The period is a time within which a petition must be filed in order that a preference, as defined, may exist, a time within which, if a petition be filed, a payment may become a preference. *Pirie v. Chicago Co., supra.*

The case of *Blennerhassett v. Sherman,* solely relied upon by appellee, is distinguishable from one arising under the act of 1898, and the case of *In re Hunt,* 139 Fed. 283, erroneously assumes the contrary. *Pirie, Scott & Co. v. Chicago etc. Co.,* 182 U. S. 438; *Wilson Brothers v. Nelson,* 183 U. S. 191; *In re Varick Bank,* 119 Fed. 991; *Vaccars v. Bank,* 103 Fed. 436; *In re Baker-Ricketson Co.,* 97 Fed. 489; *Davis v. Stevenson,* 104 Fed. 235.

"Active concealment" of the transfer, the foundation of the *Blennerhassett case,* is not shown by evidence, and is a meaningless phrase, anyway.

*Henry, Barbour & Henry* and *Harris & Willing,* for appellees.

[The brief of counsel for appellees had been lost or with-drawn from the record when it reached the reporter, hence a synopsis of it is not given.]

Argued orally by *D. H. Barnett,* for appellant, and by *R. P. Willing,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

This case was very ably argued at the bar, such an argument being made as has very greatly assisted us in our labors. It has been under consideration for some time, and we have given it the most careful examination. The case falls at last, within a very narrow compass. This is not the case of a mere ordinary preference by a debtor of a creditor, and no more. It is very much more than that. On the facts of this case, the act of the cashier was the act of the bank; and what was done, looking at the whole record, amounted clearly to a fraud under the bankruptcy law. There is nothing in the bankruptcy law, as applied to this case, which takes it from out of the operation of the principles announced in *Blennerhasset v. Sherman,* 105 U. S. 100, 26 L. Ed. 1080. Wherefore the decree is affirmed.

*Affirmed.*